**FILED**

**DECEMBER 6, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

Group One Trading LP,

        Plaintiff,

    v.

Lauren DeLuca, Lawrence Spieldenner,
John Superson and Stanton Todd,

        Defendants.

No.

**07 C 6881**

**JUDGE KENDALL
MAGISTRATE JUDGE COX**

## COMPLAINT

Plaintiff Group One Trading LP ("Group One"), by its undersigned attorneys, complains against Defendants, Lauren DeLuca, Lawrence Spieldenner, John Superson and Stanton Todd ("Defendants"), as follows:

### NATURE OF ACTION

1.    This action is for federal copyright infringement under 17 U.S.C. §§ 501 et seq., trade secret theft, computer tampering, breach of contract and conversion. This dispute stems from the unauthorized taking, infringement, and misappropriation of Group One's copyrighted works, trade secrets, and confidential and proprietary information by four former employees, prior to and upon their resignations from their employment with Group One. Defendants also solicited Group One employees and engaged in competitive activities in violation of their Employment Agreements with Group One.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction by virtue of Title 17 U.S.C. §§ 501 et seq. and Title 28 U.S.C. §§ 1331, 1338 and 1367. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391, 1400.

**PARTIES**

3.      The Plaintiff Group One is a California corporation with its principal places of business in Chicago and New York.  Group One is one of the largest proprietary option trading firms in the country.  Headquartered in New York and Chicago, Group One's 50-plus traders make markets in over 1900 equity and index options. Group One is a leader on five exchanges: The American Stock Exchange; the NYSE ARCA OX Exchange; the Chicago Board Options Exchange; the Philadelphia Stock Exchange; and the International Securities Exchange.  Group One also owns specialist posts on the American Stock Exchange; Philadelphia Stock Exchange; Chicago Board Options Exchange; and the NYSE ARCA OX Exchange.  Group One is well-known within the option trading industry for its intensive professional development program designed to cultivate traders in-house. As such, Group One's approach to option trading combines general industry expertise with unique, company-specific trading techniques.

4.      The Defendants, Lauren DeLuca, Lawrence Spieldenner, John Superson, and Stanton Todd ("Defendants"), are former employees of Group One.

5.      Defendant, Lawrence Spieldenner, began employment with Group One on July 17, 2000 as a trader in the Chicago Office.  Spieldenner signed an Employment Agreement with Group One on April 11, 2001.  Attached hereto as Exhibit A is a true and correct copy of Spieldenner's Employment Agreement.  Spieldenner resigned his employment with Group One on November 16, 2007.

6.      Defendant, Lauren DeLuca, began employment with Group One on July 30, 2001 as a trader in the Chicago office.  DeLuca signed an Employment Agreement with Group One on July 31, 2001.  Attached hereto as Exhibit B is a true and correct copy of DeLuca's Employment Agreement.  DeLuca resigned his employment with Group One on November 16, 2007.  When

he resigned, DeLuca told Group One that he had no concrete plans to trade equity options.

7.      Defendant, John Superson, began employment with Group One on June 1, 1998 as a trader in the Chicago office.  Superson signed an Employment Agreement with Group One on February 7, 1999.  Attached hereto as Exhibit C is a true and correct copy of Superson's Employment Agreement.  Superson resigned his employment with Group One on November 16, 2007.  When Superson resigned, he told Group One that he wanted to take a break from work, and then figure out what he wanted to do for a living.  He explicitly told Group One that he had not looked at option trading.

8.      Defendant, Stanton Todd, originally began employment with Group One on October 8, 1996.  Todd terminated his employment with Group One on February 18, 2003, but then was rehired on April 18, 2005 as a trader in the Chicago office.  Todd signed an Employment Agreement with Group One on April 18, 2005.  Attached hereto as Exhibit D is a true and correct copy of Todd's Employment Agreement.  Todd resigned his employment with Group One on November 18, 2007.

## FACTS

9.      The Employment Agreement each Defendant signed with Group One contains a "Confidentiality" clause that prohibits employees from improperly using or disclosing Group One information. The Employment Agreement states, in part, the following:

6.    Confidential Information.

(a)   Existence of Confidential Information. Employee acknowledges and agrees that the Company owns and has developed and compiled, and will develop and compile, certain proprietary techniques and confidential information which have great value to its business (referred to in this Agreement collectively as "Confidential Information"). Confidential Information includes not only information disclosed by the Company to Employees, but also information developed or learned by Employee during

the course of employment with the Company. Confidential Information is to be broadly defined, and includes all information that has or could have commercial value or other utility in the business in which the Company is engaged or contemplates engaging, and all information of which the unauthorized disclosure could be detrimental to the interests of the Company, whether or not such information is identified as Confidential Information by the Company. By example and without limitation, Confidential Information includes any and all information concerning trade secrets, techniques (including trading techniques, analyses of options and equity markets), software, processes, formulas, computer programs, innovations, discoveries, improvements, research, development, test results, reports, specifications, data, know-how, formats, marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, customer and supplier identities, characteristics and agreements.

(b) <u>Protection of Confidential Information</u>.   Employee will not, directly or indirectly, use, make available, sell, disclose, or otherwise communicate to any third party, other than in the course and scope of his or her assigned duties and only for the benefit of the Company, any of the Company's Confidential Information, either during or after employment with the Company.

(c) <u>Delivery of Confidential Information</u>.  Upon request by Company management, or when employment with the Company terminates, Employee will immediately deliver to the Company all originals and any copies (whether in paper, electronic, or other form) of any and all materials and writings received from, created for or belonging to the Company including, but not limited to, those which relate to or contain Confidential Information.

(d) <u>Survival</u>.   The obligations under this Section shall survive termination of this Agreement for any reason.

10.   The Employment Agreement each Defendant signed with Group One restricts

Defendants' activities during and after their employment with Group One as follows:

7.   <u>Exclusive Employment</u>.  During employment with the Company, Employee will not do anything to compete with the Company's present or contemplated business, nor will he or she plan or organize any competitive business activity.  Employee will not enter into any agreement or perform any activity which conflicts with his or her

duties or obligations to the Company.  Employee will not during his or her employment or within one (1) year after it ends, directly or indirectly, hire, solicit or encourage to terminate or alter a relationship with the Company, any employee, agent, independent contractor, client, supplier, customer, or consultant of the Company.

11.    Paragraph 9(e) of the Employment Agreement each Defendant signed with Group One also states:

> (e)   <u>Remedy for Breach</u>.  The parties hereto agree that, in the event of breach or threatened breach of any covenants of Employee pursuant to paragraphs 7, 8, or 9, the damage or imminent damage to the value and the goodwill of the Company's business shall be inestimable, and that therefore any remedy at law or in damages shall be inadequate.  Accordingly, the parties hereto agree that the Company shall be entitled to injunctive relief against Employee in the event of any breach or threatened breach of any such provisions by Employee, in addition to any other relief (including damages) available to the Company under this Agreement or under law.

12.    As one of the leading option trading firms in the United States, Group One relies not only on the skills of its traders, but also on specialized, internally-developed information to achieve optimal and lucrative trades. To this end, Group One has invested substantial time, money, and manpower to develop copyrighted works, trade secrets, and confidential and proprietary information including, but not limited to, copyrighted trading scripts, formulas, and best practices for exclusive use by Group One and its traders.  Group One's confidential and proprietary information is one of the driving forces behind Group One's success.  The information derives independent economic value from not being generally known both to the public and to other persons who can obtain economic value from its disclosure and/or use.

13.    Group One takes, and at all times here relevant, has taken reasonable efforts to maintain the secrecy of its copyrighted works, trade secrets, and confidential and proprietary information, including, but not limited to, the following:  Group One drafted traders'

- 5 -

Employment Agreements and its LLC's Operating Agreement with strict confidentiality provisions; traders must acknowledge receipt of Group One's employee handbook, which contains strict confidentiality and electronic information provisions; Group One sent traders monthly emails to remind them of the confidential nature of Group One's intellectual property and confidential information; access to Group One's trade secrets and copyrighted works, proprietary and/or confidential information is restricted to a "need-to-know" basis; access to this information is electronically restricted to select employees; Group One's confidential and proprietary information resides on a secure server; access to Group One's computer network is password protected; and Group One has purchased cutting edge computer network security products and services.

14.    Defendants are former Group One traders who had access to Group One's copyrighted works, trade secrets, and confidential and/or proprietary information on a need to know basis only. All of the Defendants resigned their employment without prior notice and *en masse* on or about November 16, 2007.

15.    Before Defendants resigned their employment with Group One, they were not working in the best interest of Group One. As employees of Group One, Defendants actively worked to compete against Group One, to convert its property, misappropriate and/or infringe its copyrighted works, trade secrets, and confidential and proprietary information and engage in other unfair and unlawful conduct in violation of federal and applicable state law and their Employment Agreements with Group One.

16.    Starting as early as February 2006 and through November 2007, Defendants engaged in multiple lengthy discussions and meetings to plan secretly: (a) the formation of their own trading business to compete with Group One; (b) the solicitation of Group One's

employees; and (c) the misappropriation of Group One's trade secrets, proprietary and/or confidential information and infringement of its copyrighted works. Their plans were very detailed, including a discussion of potential capital, technology and partnership structure. Defendant, Spieldenner, would be Chief Risk Manager; Defendant, Todd, would be Chief Financial Officer; and Defendants, DeLuca and Superson, would be in charge of Operations of Defendants' new competitive trading business. Defendant, Superson, stated one of the "goals" of their unlawful plan in a July 17, 2007 email to the other Defendants: "To become filthy rich."

17.    Defendants began to execute their plan over the next many months while still members and employees of Group One, including: a) using their insider knowledge of employee skills and salaries to recruit and solicit valued employees away from Group One; and b) accessing, downloading and/or sending to their personal email accounts, without permission, Group One's copyrighted works, trade secrets, and confidential and/or proprietary information. On information and belief, Defendants also usurped Group One's business opportunities while still members and employees of Group One.

18.    For example, between June and November 16, 2007, Defendant, Spieldenner, emailed Group One's copyrighted works, trade secrets, and confidential and/or proprietary information to his personal email account.    The information and materials Defendant, Spieldenner, misappropriated and infringed include the following: (1) copyrighted trading scripts; (2) confidential trading tools and formulas; (3) proprietary best practices information; (4) copyrighted and confidential operations documents; (5) vendor and contact information; and (6) industry and regulatory research.    On information and belief, Defendants intended to use this information in their new business venture to compete against Group One.

19.    On November 20, 2007, Group One's counsel sent each Defendant a cease and

desist letter demanding that each Defendant cease and desist from: (a) using or disclosing Group

One's materials or confidential information without authorization; and (b) soliciting Group

One's employees in violation of his contractual obligations to Group One.  The letters also

requested complete and candid responses about Group One information that Defendants removed

from Group One or information that is otherwise in their possession, custody or control as well

as all Group One employees they solicited.

20.     On November 27, 2007, Defendants' counsel responded to Group One's demands

for information on behalf of Defendants.  The letter purported to deny that Defendants took

anything from Group One, but then identified information that Defendants have in fact taken,

including, but not limited to, Group One's copyrighted trade scripts.  Defendants also admitted to

having destroyed evidence.  Defendants' disclosures were incomplete and inaccurate in many

respects.

21.     On November 30, 2007, Group One's counsel sent Defendants' counsel a letter

requesting that they provide additional information so that Defendants would make complete and

accurate disclosures and commit to complying with their obligations to Group One.   On

December 4, 2007, Group One's counsel received a letter from Defendants' counsel rejecting

Group One's counsel's requests.

<u>COUNT I – COPYRIGHT INFRINGEMENT</u>

22.     Group One adopts and realleges the allegations of Paragraphs 1-21, as if fully set

forth herein.  Count I is a claim for copyright infringement against Defendants under 17 U.S.C.

§§ 101 et seq.

23.     In 2006, Group One created a software work entitled, "Trading Script Suite" for

use in option trading.  This software constitutes copyrightable subject matter under 17 U.S.C. §§

- 8 -

101 and 102.

24.     At all relevant times, Group One has been the legal and exclusive owner for the United States of the exclusive rights under the Copyright Act to reproduce, distribute, prepare derivative works, and display the Trading Script Suite software program.  Group One is the owner of the copyright registration for this work.  This copyright registration was issued by the United States Copyright Office as Reg. TXu1-315-158, which issued on July 12, 2006.  (See attached Exhibit E).

25.     Defendants have admitted to taking, and have so far refused to return, copyrighted materials, including trading scripts, belonging to Group One.

26.     With full knowledge of Group One's rights, Defendants have willfully infringed Group One's copyright in this work, by reproducing and/or distributing works that contain substantial material copied from Group One's copyrighted work or by causing and/or participating in reproducing and/or distributing the copyrighted work without permission.

27.     On information and belief, Defendants have committed these acts of infringement within the states of Illinois and New York.

28.     Group One has been damaged by Defendants' infringing acts, and these acts are continuing to damage Group One in such a manner that Group One has no adequate remedy at law.

<u>COUNT II – TRADE SECRET THEFT</u>

29.     Plaintiff realleges and incorporates paragraphs 1-28 of the Complaint as if fully set forth herein.

30.     Pursuant to the Illinois Trade Secrets Act, a "trade secret" is information that "is sufficiently secret to derive economic value, actual or potential, from not being generally known

to other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).

31.　　The information taken by Defendants derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

32.　　The information taken by Defendants constitutes trade secrets as that term is defined by the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.

33.　　Group One took affirmative steps to maintain the confidentiality of all such trade secrets, which were reasonable under the circumstances, including limiting access on a need-to-know basis only.

34.　　As Group One's former employees, Defendants, were and are under a duty both to keep Group One's trade secrets confidential, and not to use or disclose such trade secrets other than for the benefit of Group One and with Group One's authorization. Defendants knew or should have known that they acquired such trade secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use, and/or derived such trade secrets from or through a person who has such a duty and/or through improper means.

35.　　Defendants took Group One's trade secrets with them when they terminated their employment with Group One. Defendants obtained the trade secrets: (a) from persons who they knew or reasonably should have known owed a duty to Group One to maintain their secrecy; and/or (b) under circumstances giving rise to a duty to maintain the confidentiality of the trade secrets and to use them for limited purposes. Defendants subsequently used the trade secrets in connection with their own business activities, as opposed to the business interests of Group One.

36.     As a proximate result of Defendants' actions, Defendants, and possibly others, have reaped the benefits due solely to Group One, and have thereby been unjustly enriched.

37.     Group One has been, and is being, damaged by Defendants' theft of its trade secrets.   The damage to Group One may include, but is not limited to, potential lost customers, potential lost business opportunities, loss of employees and potential employees, and a disadvantaged market position in the trading industry.   Group One will suffer additional irreparable damage unless Defendants are enjoined by this Court from their continued theft and use of Group One's trade secrets and reaping the benefits thereof.

38.     Group One is entitled to injunctive relief pursuant to Section 3 of the Illinois Trade Secrets Act and to damages in the amount of actual loss and unjust enrichment pursuant to Section 4 of the Illinois Trade Secrets Act.   In light of the willfulness of Defendants' conduct, Group One is entitled to its actual attorneys' fees pursuant to Section 5 of the Illinois Trade Secrets Act.

<u>COUNT III – COMPUTER TAMPERING</u>

39.     Plaintiff realleges and incorporates paragraphs 1-38 of the Complaint as if fully set forth herein.

40.     Defendants willfully, knowingly and without authorization copied or obtained electronic data and information belonging to Group One from Group One's computer network, without Group One's consent and without lawful authority.

41.     Defendants' conduct interfered with the right of Group One to possess such property and directly and proximately caused injury to Group One.

- 11 -

42.     As a direct and proximate result, Group One will suffer damage and loss if Defendants are not enjoined from using the information.

43.     Defendants' acts constitute a violation of the Computer Tampering section of the Illinois Computer Crime Prevention Law and entitle Group One to injunctive relief.  720 ILCS 5/16D-3.

COUNT IV – BREACH OF CONTRACT

44.     Plaintiff realleges and incorporates paragraph 1-43 of the Complaint as if fully set forth herein.

45.     Group One performed (or was excused from performing) all of its obligations under Defendants' Employment Agreements.  The Employment Agreements (*see* Exhibits A-D) entered into by Defendants with Group One constitute valid and binding written contracts.

46.     Defendants unjustifiably and inexcusably breached their contractual obligations by, among other things: (a) using, disclosing and communicating Group One's confidential information and trade secrets other than in the course and scope of employment with Group One and not for the benefit of Group One; (b) retaining Group One's property; (c) soliciting and recruiting Group One's employees to terminate their employment relationships with Group One; (d) planning and organizing competitive business activity during employment; and (e) performing activity which conflicted with their duties and obligations to Group One during employment.

47.     Group One has been damaged as a result of Defendants' breaches of their contractual obligations to Group One.

48.     As provided in Defendants' Employment Agreements, Defendants' breach or threatened breach of the covenants in paragraphs 7, 8 or 9 of the Employment Agreements

results in damage or imminent damage to the value and goodwill of Group One's business that is inestimable, and therefore any remedy at law or in damages would be inadequate.

49.     Unless enjoined by this Court, Defendants' breaches will continue to cause irreparable harm to Group One, for which Group One has no adequate remedy at law.

COUNT V – CONVERSION

50.     Plaintiff realleges and incorporates paragraph 1-49 of the Complaint as if fully set forth herein.

51.     Defendants have admitted to taking and have so far refused to return materials such as Group One's trading scripts, which include proprietary code, and various other confidential and proprietary materials, including trade secrets and copyrighted information, that do not belong to Defendants.

52.     Defendants are in possession of various trading tools and professional development materials belonging to and developed by Group One.

53.     Group One has never consented to Defendants' unauthorized use of these materials.

54.     By these acts, Defendants wrongfully asserted dominion and exercised control over Group One's property, inconsistent with Group One's rights therein, and has deprived Group One of the exclusive use of it.

55.     As a direct and proximate result, Group One has suffered damage and loss.

**PRAYER FOR RELIEF**

WHEREFORE, Group One requests that this Court enter judgment against Defendants providing for the following:

A.     injunctive and equitable relief;

B.    a monetary judgment in an amount to be determined later;

C.    an Order that Defendants pay Group One all damages suffered by Group One as a result of Defendants' unlawful acts;

D.    an Order that Defendants account for and pay Group One all gains, profits and savings Defendants derived from their unlawful acts;

E.    with respect to Count One, an Order that Defendants pay to Group One statutory damages if Group One later elects that measure of damages;

F.    an Order requiring Defendants, their officers, agents, employees and all persons acting in concert with them, to return to Group One all of the property rightfully belonging to Group One that is in Defendants' possession or under their control, including, but not limited to, all documents, materials, computer folders and files, and other data or information stored in any form whatsoever that they obtained from Group One or by virtue of their employment with Group One;

G.    an Order enjoining Defendants, their officers, agents, employees and all persons acting in concert with them, from directly and indirectly possessing, using or disclosing Group One's copyrighted works, trade secrets, and confidential and proprietary information;

H.    an Order enjoining Defendants, their officers, agents, employees and all persons acting in concert with them, for one (1) year from the date of the order, from directly or indirectly, hiring, soliciting or encouraging to terminate or alter a relationship with Group One, any employee, agent, independent contractor, client, supplier, customer or consultant of Group One;

I.    an Order requiring Defendants, their officers, agents, employees and all persons acting in concert with them, to make available to Group One or its representatives any computer

- 14 -

hard-drive or other electronic storage device in Defendants' custody or control for Group One's inspection and examination;

J.    punitive damages;

K.    costs of suit, including attorneys' fees, and interest; and

L.    such other relief as the Court may deem just and equitable.

Dated this 6th day of December, 2007.

Respectfully submitted,

Group One Trading LP, Plaintiff

By:    /s/Daniel A. Kaufman_____
One Of Its Attorneys

MICHAEL BEST & FRIEDRICH LLP
Daniel A. Kaufman
Laura Shroyer Liss
180 North Stetson Avenue
Chicago, Illinois 60601
Phone: 312-222-0800
Fax: 312-222-0818