**07 C 6881**

**JUDGE KENDALL**
**MAGISTRATE JUDGE COX**

# EXHIBIT C

Group One Trading, L.P.
220 Bush Street, Suite 360
San Francisco, CA 94104


Re:   Employment Relationship

Dear John Superson:

This letter shall set forth the terms and conditions between you ("Employee") and Group One Trading, L.P. and its affiliates (the "Company") in connection with your employment by the Company.

1.   Employment.

(a)   Term. The Company hereby employs Employee to serve in such position or positions as the Company may determine in its sole discretion. Either party may terminate Employee's employment with the Company at any time and this agreement is intended to create an "at will" employment relationship between the parties.

(b)   Direction. The Company shall retain full direction and control of the manner, means and methods by which Employee performs the services for which he or she is employed hereunder and of the place or places at which such services shall be rendered.

2.   Compensation. Employee shall be paid a base salary at the initial annual rate of $30,000, payable in installments consistent with Company's payroll practices. Payment of all compensation to Employee hereunder shall be made in accordance with the relevant Company policies in effect from time to time, including normal payroll practices, and shall be subject to all applicable employment and withholding taxes.

3.   Other Employment Benefits.

(a)   Benefit Plans. Employee shall be entitled to participate in the Company's existing health and medical programs pursuant to their terms and conditions. Nothing in this Agreement shall preclude the Company from terminating or amending any employee benefit plan or program from time to time.

(b)   Vacation. Employee shall be entitled to two (2) weeks of vacation for each year of full employment, exclusive of legal holidays, provided the scheduling of Employee's vacation does not interfere with the Company's normal business operations.

(c)   No Other Benefits. Employee understands and acknowledges that the compensation specified in Sections 2 and 3 of this Agreement shall be in lieu of any and all other compensation, benefits and plans, and that, in the event an employee benefit plan of any nature is developed or maintained by the Company in the future, Employee shall have no right to participate therein by virtue of this Agreement; such right, if any, shall be granted by the Company in its sole discretion.

4. <u>Employee's Business Activities</u>. Employee shall devote his or her professional time, attention and energy substantially to the business and affairs of the Company and its affiliates, as its business and affairs now exist and as they hereafter may be changed, and shall not during the term of his or her employment hereunder be engaged in any other business activity which interferes with the Employee's obligation to the Company.

5. <u>Training Expenses</u>.

(a) <u>Expenses</u>. Company is expected to incur expenses of $50,000 for certain training of Employee (the "Training Cost").

(b) <u>Reimbursement to Company While Employed</u>. Beginning on the date that Employee is promoted to full market maker, if ever, the Training Cost will be amortized on a straight line basis over a 24 month period (approximately $2,080 per month). If Employee terminates his employment with the Company for any reason, Employee shall immediately reimburse to the Company the unamortized portion of the Training Cost by certified check (or, at the option of the Company, through deduction of any final salary payment owed).

(c) <u>No Reimbursement Required if Employee Terminated by Company for Other than Cause</u>. In the event that Company elects to terminate Employee's employment for other than "cause" (it being understood that the Company has the complete right and discretion to terminate Employee for any reason), Employee shall not be obligated to reimburse the Company for the unreimbursed portion of the Training Cost. "Cause" is herein defined to mean: loss of legal capacity; dishonesty; incompetence; breach by Employee of this Agreement; misconduct; actions by Employee detrimental to Company's reputation; or Employee's conviction of a criminal offense.

6. <u>Confidential Information</u>.

(a) <u>Existence of Confidential Information</u>. The Company owns and has developed and compiled, and will develop and compile, certain proprietary techniques and confidential information which have great value to its business (referred to in this Agreement collectively as "Confidential Information"). Confidential Information includes not only information disclosed by the Company to Employee, but also information developed or learned by Employee during the course of employment with the Company. Confidential Information is to be broadly defined, and includes all information that has or could have commercial value or other utility in the business in which the Company is engaged or contemplates engaging, and all information of which the unauthorized disclosure could be detrimental to the interests of the Company, whether or not such information is identified as Confidential Information by the Company. By example and without limitation, Confidential Information includes any and all information concerning trade secrets, techniques, software, processes, formulas, computer programs, innovations, discoveries, improvements, research, development, test results, reports, specifications, data,

know-how, formats, marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, customer and supplier identities, characteristics, and agreements.

(b) <u>Protection of Confidential Information</u>. Employee will not, directly or indirectly, use, make available, sell, disclose, or otherwise communicate to any third party, other than in his or her assigned duties and for the benefit of the Company, any of the Company's Confidential Information, either during or after employment with the Company.

(c) <u>Delivery of Confidential Information</u>. Upon request or when employment with the Company terminates, Employee will immediately deliver to the Company all copies of any and all materials and writings received from, created for or belonging to the Company including, but not limited to, those which relate to or contain Confidential Information.

(d) <u>Survival</u>. The obligations under this Section shall survive termination of this Agreement for any reason.

7. <u>Exclusive Employment</u>. During employment with the Company, Employee will not do anything to compete with the Company's present or contemplated business, nor will he or she plan or organize any competitive business activity. Employee will not enter into any agreement which conflicts with his or her duties or obligations to the Company. Employee will not during his or her employment or within one (1) year after it ends, directly or indirectly, hire, solicit or encourage to terminate or alter a relationship with the Company, any employee, agent, independent contractor, client, supplier, customer, or consultant of the Company.

8. <u>No Inconsistent Obligations</u>. Employee is aware of no obligations, legal or otherwise, inconsistent with the terms of this Agreement or with his or her undertaking employment with the Company. Employee will not disclose to the Company, or use, or induce the Company to use, any proprietary information or trade secrets of others. Employee represents and warrants that he or she has returned all property and confidential information belonging to all prior employers.

9. <u>Miscellaneous</u>.

(a) <u>Attorneys' Fees</u>. Should either party hereto, or any heir, personal representative, successor or assign of either party hereto, resort to litigation or arbitration in connection with this Agreement or Employee's employment with the Company, the party or parties prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to recover its or their reasonable attorneys' fees and costs in such litigation or arbitration from the non-prevailing party or parties.

(b) <u>Entire Agreement</u>. This Agreement, together with the attached exhibits, contains the entire agreement and understanding between the parties hereto and supersedes any prior or

SF3-40339.2

contemporaneous written or oral agreements between them respecting the subject matter hereof.

(c) **Amendment**. This Agreement may be amended only by a writing signed by Employee and by a duly authorized representative of the Company.

(d) **Severability**. If any term, provision, covenant or condition of this Agreement, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void, the remainder of this Agreement and such term, provision, covenant or condition as applied to other persons, places and circumstances shall remain in full force and effect.

(e) **Construction**. The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The language in all parts of this Agreement shall be in all cases construed according to its fair meaning and not strictly for or against the Company or Employee.

(f) **Remedy for Breach**. The parties hereto agree that, in the event of breach or threatened breach of any covenants of Employee, the damage or imminent damage to the value and the goodwill of the Company's business shall be inestimable, and that therefore any remedy at law or in damages shall be inadequate. Accordingly, the parties hereto agree that the Company shall be entitled to injunctive relief against Employee in the event of any breach or threatened breach of any of such provisions by Employee, in addition to any other relief (including damages) available to the Company under this Agreement or under law.

(g) **Assistance in Litigation**. Employee shall, during and after termination of employment, upon reasonable notice, furnish such information and proper assistance to the Company as may reasonably be required by the Company in connection with any litigation in which it or any of its subsidiaries or affiliates is, or may become a party.

(h) **Arbitration**. Any controversy, claim or dispute arising out of or relating to this Agreement or the employment relationship between Employee and Company, either during the existence of the employment relationship or afterwards, between the parties hereto, their assignees, their affiliates, their attorneys, or agents, shall be settled by arbitration in San Francisco, California. Arbitration shall be conducted in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association. The parties agree to abide by all decisions and awards rendered in such proceedings. Such decisions and awards rendered by the arbitrator shall be final and conclusive and may be entered in any court having jurisdiction thereof as a basis of judgment and of the issuance of execution for its collection. All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity; provided however, that nothing in this subsection hereof shall be construed as precluding the Company from bringing an action for injunctive relief or other equitable relief. The parties shall keep confidential the existence of the claim, controversy or

disputes from third parties (other than arbitrator(s)), and the determination thereof, unless otherwise required by law.

    If this is acceptable to you, please sign and return a copy to us of this letter.

Dated: 02-07-99

Group One, Ltd.

By: _____
Name: Heidi M. Lettis
Title: Director, H. R. Development

Accepted and Agreed:

_____
Signature of Employee

John H. Superson
Printed Name

SF3-40339.2