# EXHIBIT D



440 S. LaSalle Street, Suite 3232
Chicago, IL 60605

April 18, 2005

Mr. Stanton Todd
1870 N. Hoyne
Chicago, IL 60647

Re:   Employment Agreement

Dear Stanton:

This letter shall set forth the terms and conditions between you ("you", "your" or "Employee") and Group One, LP and its affiliates (the "Company") in connection with your employment by the Company.

1. Scope of Employment.

    (a) Direction. The Company hereby employs Employee to serve in such position or positions as the Company may determine in its sole discretion. The Company shall retain full direction and control of the manner, location, means and methods by which you perform the services for which you are employed hereunder.

2. Compensation.

    (a) Trader Compensation. Employee shall be paid, an annual recoverable draw of $40,000, and shall also be eligible for a tiered bonus payout on trading profits beginning at 40%.

3. Other Employment Benefits.

    (a) Benefit Plans. Employee shall be entitled to participate in the Company's existing health and medical programs pursuant to their terms and conditions. Nothing in this Agreement shall preclude the Company from amending, adding or terminating any employee benefit plan or program.

    (b) Vacation. As a trader, Employee shall be entitled to three (3) weeks of vacation for each year of full employment, exclusive of legal holidays, provided the scheduling of Employee's vacation does not interfere with the Company's normal business operations. Upon tenure, Employee will be entitled to vacation pursuant to the terms set forth in the employee handbook.

    (c) Employee understands and acknowledges that the compensation and benefits specified in Sections 2 and 3, respectively, of this Agreement shall be in lieu of any and all other

compensation, benefits and plans, and that, in the event an employee benefit plan of any nature is developed or maintained by the Company in the future, Employee shall have no right to participate therein by virtue of this Agreement; such right, if any, shall be granted by the Company in its sole discretion.

4. <u>Employee's Business Activities</u>. Employee shall devote his or her professional time, attention and energy substantially to the business and affairs of the Company, as its business and affairs now exist and as they hereafter may be changed, and shall not during the term of his or her employment hereunder be engaged in any other business activity which interferes with or otherwise conflicts with the Employee's obligation to the Company.

5. <u>Employment Status and Termination of Employment</u>.

    (a) <u>At-will Employment</u>. Employee's employment under this Agreement is and will remain, at all times, "at-will." This means that Employee or the Company may terminate this Agreement, and the employment relationship, at any time, for any reason, with or without cause and with or without notice.

    (b) <u>Change in "At-will" Status</u>. Any change to Employee's at-will status can only occur if it is contained in a writing signed by Employee and the Company's Director of Human Resources.

    (c) In the event that Employee voluntarily terminates employment for any reason, Employee shall only be entitled under this Agreement to base salary earned, and to accrued but unused vacation, through the date employment terminates.

    (d) In the event that Employee is terminated by the Company, other than for Cause, as defined in paragraph 5(f) below, Employee shall be paid base salary through the date of termination, as well as accrued vacation. Payment of a bonus, if any, shall be made pursuant to the Trader Compensation and Bonus Plan referenced in Appendix A.

    (e) If Employee is terminated for Cause, as defined in paragraph 5(f) below, Employee shall only be entitled to payment of any salary and accrued vacation owed to Employee as of the date of termination. Payment of a bonus, if any, shall be made pursuant to the Trader Compensation and Bonus Plan.

    (f) "Cause" is herein defined to mean: loss of legal capacity to trade, or a determination by the Company of any of the following: misconduct, dishonesty, gross negligence or unsatisfactory performance by the Employee, breach by Employee of paragraphs 4, 6, 7 or 8 of this Agreement; actions by Employee detrimental to Company's business interests or its reputation; failure or refusal to follow reasonable directions from management; or Employee's conviction of a criminal offense.

    (g) Except as provided herein, Employee shall not be entitled to any other compensation.

6. <u>Confidential Information</u>.

    (a) <u>Existence of Confidential Information</u>. Employee acknowledges and agrees that the Company owns and has developed and compiled, and will develop and compile, certain

proprietary techniques and confidential information which have great value to its business (referred to in this Agreement collectively as "Confidential Information"). Confidential Information includes not only information disclosed by the Company to Employee, but also information developed or learned by Employee during the course of employment with the Company. Confidential Information is to be broadly defined, and includes all information that has or could have commercial value or other utility in the business in which the Company is engaged or contemplates engaging, and all information of which the unauthorized disclosure could be detrimental to the interests of the Company, whether or not such information is identified as Confidential Information by the Company. By example and without limitation, Confidential Information includes any and all information concerning trade secrets, techniques (including trading techniques, analyses of options and equity markets), software, processes, formulas, computer programs, innovations, discoveries, improvements, research, development, test results, reports, specifications, data, know-how, formats, marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, customer and supplier identities, characteristics, and agreements.

(b) Protection of Confidential Information. Employee will not, directly or indirectly, use, make available, sell, disclose, or otherwise communicate to any third party, other than in the course and scope of his or her assigned duties and only for the benefit of the Company, any of the Company's Confidential Information, either during or after employment with the Company.

(c) Delivery of Confidential Information. Upon request by Company management, or when employment with the Company terminates, Employee will immediately deliver to the Company all originals and any copies (whether in paper, electronic, or other form) of any and all materials and writings received from, created for or belonging to the Company including, but not limited to, those which relate to or contain Confidential Information.

(d) Survival. The obligations under this Section shall survive termination of this Agreement for any reason.

7. Exclusive Employment. During employment with the Company, Employee will not do anything to compete with the Company's present or contemplated business, nor will he or she plan or organize any competitive business activity. Employee will not enter into any agreement or perform any activity which conflicts with his or her duties or obligations to the Company. Employee will not during his or her employment or within one (1) year after it ends, directly or indirectly, hire, solicit or encourage to terminate or alter a relationship with the Company, any employee, agent, independent contractor, client, supplier, customer, or consultant of the Company.

8. No Inconsistent Obligations. Employee is aware of no obligations, legal or otherwise, inconsistent with the terms of this Agreement or with his or her undertaking employment with the Company. Employee will not disclose to the Company, or use, or induce the Company to use, any proprietary information or trade secrets of others. Employee represents and warrants that he or she has returned all property and confidential information belonging to all prior employers.

9. Miscellaneous.

   (a) Entire Agreement. This Agreement, together with any attached exhibits, contains the entire agreement and understanding between the parties hereto and supersedes any prior or contemporaneous written or oral agreements between them respecting the subject matter hereof.

   (b) Amendment. This Agreement may be amended only by a writing signed by Employee and by a duly authorized representative of the Company.

   (c) Severability. If any term, provision, covenant or condition of this Agreement, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void, the remainder of this Agreement and such term, provision, covenant or condition as applied to other persons, places and circumstances shall remain in full force and effect.

   (d) Construction. The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The language in all parts of this Agreement shall be in all cases construed according to its fair meaning and not strictly for or against the Company or Employee.

   (e) Remedy for Breach. The parties hereto agree that, in the event of breach or threatened breach of any covenants of Employee pursuant to paragraphs 7, 8 or 9, the damage or imminent damage to the value and the goodwill of the Company's business shall be inestimable, and that therefore any remedy at law or in damages shall be inadequate. Accordingly, the parties hereto agree that the Company shall be entitled to injunctive relief against Employee in the event of any breach or threatened breach of any of such provisions by Employee, in addition to any other relief (including damages) available to the Company under this Agreement or under law.

   (f) Assistance in Litigation. Employee shall, during and after termination of employment, upon reasonable notice, furnish such information and proper assistance to the Company as may reasonably be required by the Company in connection with any litigation in which it or any of its subsidiaries or affiliates is, or may become a party.

   (g) Paragraph Headings. All paragraph headings in this Agreement are intended to be illustrative only and should not be relied on for any interpretation.

10. Dispute Resolution.

   (a) Arbitration. Any controversy, claim or dispute arising out of or relating to this Agreement or the employment relationship between Employee and Company, either during the existence of the employment relationship or afterwards, between the parties hereto, their assignees, their affiliates, their attorneys, or agents, shall be referred to arbitration. Arbitration shall be conducted by and in accordance with the then prevailing arbitration rules of the Judicial Arbitration and Mediation Service. The parties agree to abide by all decisions and awards rendered in such proceedings. Such decisions and awards rendered by the arbitrator shall be final and conclusive and may be entered in any court having

jurisdiction thereof as a basis of judgment and of the issuance of execution for its collection.

All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity; the arbitrator shall apply applicable law in deciding any dispute or determining any award; and shall render a written ruling and rationale for any award; provided however, that nothing in this Section shall be construed as precluding Employee or the Company from bringing an action for injunctive relief or other equitable relief in a matter where the party can show that an injunction or other equitable relief warrants prompt and immediate recourse to a court of competent jurisdiction.

(b) <u>Confidential Notice of Dispute Resolution</u>. In any arbitration, the parties shall keep confidential the existence of the claim, controversy or disputes from third parties (other than arbitrator(s)), and the determination thereof, unless otherwise required by law.

(c) <u>Costs and Reasonable Attorneys' Fees</u>. Should either party hereto, or any heir, personal representative, successor or assign of either party hereto, resort to arbitration or litigation in connection with this Agreement or Employee's employment with the Company, the party or parties prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to an award of its or their reasonable attorneys' fees and costs in such litigation or arbitration from the non-prevailing party or parties.

If this is acceptable to you, please sign and return to us the executed original of this letter and retain a copy for your file.

Group One Trading, LP

By: _____
Name: Heidi M. Robertson
Title: Managing Director, Human Resources


Accepted and Agreed:

_____        4/18/05
Signature of Employee         Date


_____
Stanton Todd