IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Group One Trading LP,<br><br>        Plaintiff,<br><br>   v.<br><br>Lauren DeLuca, Lawrence Spieldenner, John Superson and Stanton Todd,<br><br>        Defendants. | No.  07 CV 6881<br><br>Honorable Virginia M. Kendall<br><br>Magistrate Judge Susan E. Cox |

**GROUP ONE'S BRIEF IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION**

Plaintiff Group One Trading LP ("Group One"), by and through the undersigned attorneys, Michael Best & Friedrich LLP, submits this brief in Support of its Motion for A Temporary Restraining Order and Injunctive Relief.[1]

**INTRODUCTION**

Group One entrusted Defendants, who were employees of Group One, with its copyrighted works, confidential information and trade secrets. Defendants violated that trust by scheming to start a competing business, stealing documents from Group One, and soliciting Group One employees, prior to and upon their resignation.

Defendants' unlawful plan must be stopped. Group One is in great need of the Court's assistance to order that Defendants return the Group One property they have stolen, enjoin Defendants from possessing or using such property to compete with their former employer, and

---

[1] In conjunction with the filing of this action, Group One is filing a demand for arbitration in California pursuant to the arbitration provisions in Defendants' Employment Agreements. Group One seeks this injunctive relief pending arbitration. *See American Food & Vending Corp. v. UPS Oasis Supply Corp.*, 2003 U.S. Dist. LEXIS 1464, *7 (7th Cir. 2003); *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524, 527 (7th Cir. 1996); *Gateway E. Ry. V. Terminal R. R. Ass'n*, 35 F.3d 1134, 1141 (7th Cir. 1994); *Merrill Lynch v. Salvano*, 999 F.2d 211, 212 (7th Cir. 1993); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 351 (7th Cir. 1983).

order Defendants to comply with their contractual and other obligations since they resigned from Group One.

## FACTS

Group One is one of the largest proprietary option trading firms in the country. (Declaration of John Gilmartin, (Ex. A ¶2.) Its 50-plus traders make markets in over 1900 equity and index options. (Ex. A ¶3.) Group One is well-known within the option trading industry for its intensive professional development program designed to cultivate traders in-house. (Ex. A ¶6.) As such, Group One's approach to option trading combines general industry expertise with unique, company-specific trading techniques. *Id.* As one of the leading option trading firms in the United States, Group One relies not only on the skills of its traders, but also on specialized, internally-developed information to achieve optimal and lucrative trades. *Id.* To this end, Group One has invested substantial time, money, and manpower to develop copyrighted works and trade secret, proprietary and confidential information including, but not limited to, copyrighted trading scripts for exclusive use by Group One and its traders. (Ex. A ¶26.)

Group One takes, and has taken, substantial efforts to maintain the secrecy of its copyrighted works, trade secrets, and confidential and proprietary information, including, but not limited to, the following: Group One's traders' Employment Agreements and its LLC's Operating Agreement contain strict confidentiality provisions; traders must acknowledge receipt of Group One's employee handbook, which contains strict confidentiality and electronic information provisions; Group one sends traders monthly emails to remind them of the confidential nature of Group One's intellectual property and confidential information; access to Group One's copyrighted works and trade secret, proprietary and confidential information is restricted to a "need-to-know" basis; access to this information is electronically restricted to

select employees; Group One confidential and proprietary information resides on a secure server; access to Group One's computer network is password protected; and Group One has purchased cutting edge computer network security products and services. (Ex. A ¶¶29, 32, 41, 45, 48-56.)

Defendants are former Group One traders who had access to Group One's copyrighted works, trade secrets, and confidential and proprietary information on a need-to-know basis only. (Ex. A ¶¶ 8, 10, 12, 14, 16, 18.) All of the Defendants resigned their employment without prior notice and *en masse* on or about November 16, 2007. (Ex. A ¶ 9-18.) Each of the Defendants entered into an Employment Agreement with Group One which, among other things, prohibits Defendants from disclosing and using Group One's confidential information for their own benefit and soliciting Group One's employees. (Ex. A ¶¶9-18, 54.) Before Defendants resigned from their employment with Group One, they were not working in the best interest of Group One. (Ex. A ¶¶7, 29, Ex. B. ¶3.) Rather, as employees of Group One, Defendants actively worked to compete against Group One, to convert its property, misappropriate its copyrighted works, trade secrets, and confidential and proprietary information and engage in other unfair and unlawful conduct in violation of federal and applicable state law and their Employment Agreements with Group One. (Ex. A ¶20.) (*See* Declaration of Andrew Crain, Ex. B ¶3, 8-27.)

Starting as early as March 2006 and through November 2007, Defendants engaged in multiple lengthy discussions and meetings to plan secretly: (a) the formation of their own trading business to compete with Group One; (b) the solicitation of Group One's employees; and (c) the misappropriation of Group One's copyrighted works, trade secrets, and confidential and proprietary information. (Ex. B ¶¶12-27.) Their plans were very detailed, including a discussion of potential capital, technology and partnership structure. Defendant, Spieldenner, would be Chief Risk Manager; Defendant, Todd, would be Chief Financial Officer; and Defendants,

DeLuca and Superson, would be in charge of Operations. (Ex. F to Ex. B.) Defendant, Superson, stated in a July 17, 2007 email to the other Defendants that one of the "goals" of their unlawful plan is: "To become filthy rich." *Id.*

Defendants executed their plan over the next many months. (Ex. B¶¶12-27.) While still employees of Group One, Defendants: a) used their insider knowledge of employee skills and salaries to recruit and solicit valued employees away from Group One; b) usurped Group One's business opportunities; and c) accessed, downloaded and/or sent to their personal email accounts, without permission, Group One's copyrighted works, trade secrets, and confidential and proprietary information belonging to Group One. *Id.*

For example, between June and November 16, 2007, Defendant, Spieldenner, systematically emailed Group One's copyrighted works, trade secrets, and confidential and proprietary information to his personal email account. (Ex. B ¶¶26-27, 32.) The information Spieldenner misappropriated can be categorized as follows: (1) copyrighted trading scripts; (2) confidential trading tools and formulas; (3) proprietary best practices information; (4) copyrighted and confidential operations documents; (5) vendor and contact information; and (6) industry and regulatory research. (Ex. B ¶¶26-27.) Defendants intended to use this information in their new business venture to compete against Group One. (Ex. B ¶3.) Each defendant also breached their Employment Agreements by, among other things, using Group One's confidential information for their own benefit to the detriment of Group One and failing or refusing to return any Group One confidential information in their possession upon their resignation from Group One. (Ex. A ¶¶51-54.)

On November 20, 2007, Group One sent Defendants a cease and desist letter demanding, among other things, that Defendants respond to Group One's requests for information and

provide necessary assurances. In Defendants' counsel's November 27, 2007 letter, he failed to identify several items of information stolen and falsely stated that Defendants did not solicit any Group One employee, but *admitting that Defendants destroyed evidence*. In Group One's counsel's November 30, 2007 letter, he once again asked that Defendants disclose fully the extent of the confidential information and materials Defendants took from Group One, submit certifications regarding such materials, the employees Defendants solicited, and that Defendants promise to preserve evidence. On December 4, 2007, Defendants' rejected Group One's requests. Defendants have given Group One no option but to seek emergency and other relief.

**ARGUMENT**

Group One can demonstrate all of the factors required for a temporary restraining order. A party seeking injunctive relief is required to demonstrate: (1) a likelihood of success on the merits; (2) that it has no adequate remedy at law; and (3) that it will suffer irreparable harm if the relief is not granted. *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2003) (citing *Ty, Inc. v. Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001)). If the moving party can satisfy these conditions, the Court must then consider any irreparable harm an injunction would cause the nonmoving party. *Id.* Finally, the Court must consider any consequences to the public from denying or granting the injunction. *Id.* Sitting as a court of equity, the Court then weighs all these factors employing a sliding-scale approach. *Id.* That is, the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor. *Id.*

**A.    Group One Has a Reasonable Likelihood of Success on the Merits.**

"[T]he threshold is low" in determining whether there is a reasonable likelihood of success on the merits. *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1998). At the preliminary injunction stage, a plaintiff need demonstrate only that it has

a "better than negligible" chance of succeeding on the merits to justify injunctive relief. *Id.*

There is a reasonable likelihood of success on the merits of Group One's claims for injunctive relief. Defendants had no authority to access Group One's network for the purpose of transmitting to themselves Group One copyrighted works, trade secrets, and confidential and proprietary information for their own use in competition with Group One. Defendants' actions violate several state and federal laws, including 17 U.S.C. §501 (copyright infringement); 765 ILCS §1065 (trade secret misappropriation); and 720 ILCS 5/16D (computer crime). Moreover, the nature of Defendants' departure from Group One makes it very clear that they intend to use such information in starting and running their competing business.

### 1. Copyright Infringement.

Count I of the Complaint sets forth a claim for copyright infringement. The Copyright Act provides the owner of a copyright with the exclusive right to publish, or to authorize others to publish, the copyrighted work. 17 U.S.C. §106(4). Any person who violates this exclusive right is an infringer. 17 U.S.C. §501(a). In an action for infringement, the copyright owner may seek statutory damages, 17 U.S.C. §504(c), injunctive relief, 17 U.S.C. §502, and attorney's fees and costs, 17 U.S.C. §505.

A plaintiff claiming copyright infringement must show both: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S. Ct. 1282 (1991)). A certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a copyright. *Id.* at 914-15 (citing *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994)). Group One has established this prima facie evidence of validity by registering its works.

Copying may be proven by direct evidence. *Id.* at 915. Defendants copied the copyrighted works by sending the works to their electronic mail accounts.

Group One has invested substantial time and effort into developing copyrighted trading scripts for use by their traders. (Ex. A ¶ 26.) The trading scripts are formulas, compilations, programs, processes, information and techniques not generally known to the public and derive independent economic value as such. (Ex. A ¶ 27.) Defendants took, without authorization, several of Group One's copyrighted trading scripts. (Ex. A ¶ 23.) Group One has shown a likelihood of success on its copyright infringement claim.

### 2. Trade Secret Theft.

Group One also can show a likelihood of success on its trade secret claim in Count II of its Complaint. To succeed on a claim under the Illinois Trade Secrets Act ("ITSA"), plaintiff must plead and prove that: (1) the information in question was a trade secret; (2) defendants misappropriated it; and (3) defendants used the information in their business. *Papa John's Intern., Inc. v. Rezko,* 446 F.Supp.2d 801 (N.D. Ill. 2006). The ITSA defines a trade secret as:

> information, including but not limited to… method[s] and technique[s]…that [are] sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from [their] disclosure; and is the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy.

765 ILCS 1065/2(d). Significant factors in determining whether a trade secret exists include the extent to which the information is known outside of the plaintiff's business, the measures taken to safeguard the secrecy of the information and the value of the information to plaintiff and plaintiff's competitors. *Strata Marketing, Inc.,* 317 Ill. App. 3d 1054, 1068, 740 N.E.2d 1166, 1176 (1st Dist. 2000) (citing *ILG Industries, Inc. v. Scott,* 49 Ill.2d 88, 273 N.E.2d 393 (1971)).

The most important factors in determining whether information is a trade secret are

whether and how the employer acts to keep information secret. *Jackson v. Hammer*, 274 Ill.App.3d 59, 653 N.E.2d 809 (4th Dist. 1995). Group One has taken reasonable efforts to maintain the secrecy of its copyrighted works, trade secrets, and confidential and proprietary information, including, but not limited to the following: Group One drafted traders' Employment Agreements and its LLC's Operating Agreement to contain strict confidentiality provisions; traders must acknowledge receipt of Group One's employee handbook, which contains strict confidentiality and electronic information provisions; Group One sends traders monthly emails to remind them of the confidential nature of Group One's intellectual property and confidential information; access to Group One's copyrighted works, trade secrets, and confidential and proprietary information is restricted to a "need-to-know" basis; access to this information is electronically restricted to select employees; Group One confidential and proprietary information resides on a secure server; access to Group One's computer network is password protected; and Group One has purchased cutting edge computer network security products and services. (Ex. A ¶¶28, 29, 32, 41, 45, 48-56.)

Actual or threatened misappropriation is sufficient to warrant a preliminary or permanent injunction. *See* 735 ILCS 1065/3(a) ("actual or threatened misappropriation may be enjoined."). Furthermore, a plaintiff can rely on circumstantial evidence to prove misappropriation. *RKI, Inc. v. Grimes*, 177 F.Supp.2d 859 (N.D. Ill. 2001). Misappropriation of trade secrets can be shown one of three ways: 1) by improper acquisition; 2) unauthorized disclosure; or 3) unauthorized use--use is just one theory that can be pursued under the ITSA, but it is not the only theory. *Liebert Corp. v. Mazur*, 357 Ill.App.3d 265, 827 N.E.2d 909 (1st Dist. 2005). In *RKI*, an employee engaged in misappropriation by downloading his employer's customer and financial information from the employer's computer databases into his personal computer, where

circumstances indicated that the downloading was for purposes other than the employer's best interests.  177 F.Supp.2d at 860 (N.D. Ill. 2001).

Similarly, in the present case, without permission, Defendants accessed, downloaded and/or sent to their personal email accounts, Group One's copyrighted works, trade secrets, and confidential and proprietary information.  (Ex. B ¶¶3, 26-27.)  Defendants certainly did not do so to further Group One's interests, as required under their Employment Agreements; rather, Defendants' actions were taken for their own use of Group One's trade secrets in their competing business.  (Ex. A ¶54; Ex. B ¶3.)  Consequently, Group One has shown a likelihood of its success on its trade secrets claim.

### 3. Computer Crime.

Count III of the Complaint sets forth a claim for computer tampering in violation of the Illinois Computer Crime Prevention Law.  A person commits the offense of computer tampering under the Illinois Computer Crime Prevention Law when he knowingly and without the authorization of a computer's owner or in excess of the authority granted to him accesses or causes to be accessed a computer or any part thereof, or a program or data, and obtains data or services.  720 ILCS 5/16D-3.

Defendants accessed Group One's computers and obtained information in excess of the authority granted to them.  In anticipation of leaving their employment with Group One, Defendants accessed copyrighted works, trade secrets, and confidential and proprietary information and obtained copies for themselves by sending the data to their personal email addresses.  (Ex. B ¶3.)  Group One will suffer loss from Defendants' violation of the law if Defendants are not enjoined from using Group One's information.  As a result, Group One has a likelihood of success on the merits of its computer crime claim in its Complaint as well.

**4. Breach of Contract.**

Group One also has a reasonable likelihood of success on its breach of contract claim against Defendants. Illinois law enforces employment agreements as it enforces any agreement. *E.g., McInerney v. Charter Golf, Inc.,* 176 Ill. 2d 482, 485, 680 N.E.2d 1347, 1349 (1997) (subjecting employment contracts to the same legal analysis as all contracts). To state a cause of action for breach of contract, a party must allege: (1) a valid and enforceable contract; (2) substantial performance by Plaintiff; (3) a breach by the Defendant; and (4) resultant damages. *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 759, 814 N.E.2d 960, 967 (1st Dist. 2004).

Group One had a valid and enforceable contract with each Defendant. First, the covenants contained in the Employment Agreements were ancillary to a valid employment relationship and supported by adequate consideration—employment with Group One. *See, e.g., Abel v. Fox*, 274 Ill. App. 3d 811, 821, 654 N.E.2d 591, 598 (4th Dist. 1995)(two years' continued employment sufficient consideration for restrictive covenant). Second, Group One has a legitimate and protectable interest in its trade secrets and confidential information which Defendants and acquired at Group One and are now using or threatening to use for their own benefit, including the solicitation of Group One's customers. *Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 72-73, 589 N.E.2d 640, 647 (1st Dist. 1992). Illinois courts consistently have enforced restrictive covenants if an employee has "acquired confidential information through his employment and subsequently attempted to use it for his own benefit." *The Agency, Inc. v. Grove*, 362 Ill. App. 3d 206, 214, 839 N.E.2d 606, 614 (2nd Dist. 2005); *Millard Maintenance Service Co. v. Bernero*, 207 Ill. App. 3d 736, 746, 566 N.E.2d 379, 385 (1st Dist. 1990).

Third, the covenants are reasonable restrictions to protect Group One's legitimate business interests. *See, e.g., Millard,* 207 Ill. App. 3d at 749-750, 566 N.E.2d at 389 (noting that a restrictive covenant's reasonableness "is measured by its hardship to the defendant, its effect upon the general public, and the reasonableness of the time, territory, and activity restrictions."). A one-year restriction on solicitation has been found to be enforceable as a reasonable duration. *Midwest Tel., Inc. v. Oloffson*, 298 Ill. App. 3d 548, 557, 699 N.E.2d 230, 235 (3d Dist. 1998). Moreover, where the interest the employer seeks to protect through a nondisclosure covenant is a trade secret or other confidential information, the covenant need not contain a geographic or temporal limit to be enforceable. *First Health Group Corp. v. National Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 229 (M.D. Pa. 2001).

Group One substantially performed its obligations under the Employment Agreements. Defendants breached the agreements by, among other things, taking confidential and proprietary information from Group One, failing and refusing to return Group One's Confidential Information upon their resignation, planning a new company to compete with Group One, and soliciting Group One employees to terminate their employment with Group One. (Ex. B ¶¶ 3, 12-27.) Group One will be damaged by Defendants' breach of contract if the Court does not enjoin them from using the resources gained from the breach in establishing a competing business. Therefore, Group One has shown a likelihood of its success on its breach of contract claim and is entitled to injunctive relief.

### 5. Conversion

Count V of the Complaint sets forth a claim for conversion. To state a cause of action for conversion, a plaintiff must allege: (1) it has a right to the property it seeks; (2) it has an absolute and unconditional right to the immediate possession of that property; (3) it has made a demand

for return of the property; and (4) the defendant has wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998); *Western States Ins. Co. v. Louis E. Olivero & Assocs.*, 283 Ill. App. 3d 307, 310, 670 N.E.2d 333, 335 (3d Dist. 1996), *appeal denied,* 171 Ill. 2d 587, 677 N.E.2d 972, *and cert. denied*, 522 U.S. 820 (1997). "Retention of property after a valid demand for its return constitutes conversion." *Id.* (citation omitted).

Defendants wrongfully and without authorization assumed ownership over Group One's property. They have admitted to taking and thus far have refused Group One's demand to return materials, such as Group One's trading scripts, which include proprietary code, trade secrets and confidential and proprietary information, which do not belong to Defendants. Group One never has consented to Defendants' unauthorized use of these materials and has an absolute and unconditional right to this property. As a result, Group One also has shown a likelihood of success on its conversion claim.

      **B.**    **Group One is Likely to Suffer Irreparable Harm if Injunctive Relief is Not Granted and Group One Has no Adequate Remedy at Law.**

Where a statute expressly authorizes injunctive relief, the general rules of equity requiring a showing of irreparable injury and a lack of an adequate remedy at law need not be shown. *Lucini Italia Co. v. Grappolini,* 2003 U.S. Dist. LEXIS 7134, *54 (N.D. Ill. 2003) (citing *Illinois Bell Telephone Co. v. Lake County Grading Co. of Libertyville, Inc.*, 313 Ill.App.3d 184, 189, 728 N.E.2d 1178 (2000)) (granting injunctive relief for violation of the Illinois Trade Secrets Act). For instance, "Irreparable injury may be presumed upon the showing of a prima facie case of copyright infringement." *QSRSoft, Inc. v. Rest. Tech., Inc.*, 2006 U.S. Dist. LEXIS 76120 *8 (N.D. Ill. 2006) (citing Atari, Inc. v. North American Philips Consumer Elec. Corp., 672 F.2d 607, 620 (7th Cir. 1982) (superseded by statute on other procedural

grounds)). Therefore, Group One need not show irreparable injury and inadequate remedy at law because Defendants violated several statutes and Group One has standing to pursue its claims.

Moreover, paragraph 9 of the Employment Agreements Defendants signed provides that any remedy at law or in damages is inadequate when an employee violates paragraph 7, 8 or 9 of the Employment Agreement, and Group One is entitled to injunctive relief in the event of a breach or threatened breach of any of these provisions.

In any event, Group One can show irreparable injury and lack of an adequate remedy at law. Showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages. *Gateway E. Ry. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1140 (7th Cir. 1994). Furthermore, although economic loss generally will not sustain an injunction, a damages remedy may be inadequate if it comes "too late to save plaintiff's business." *Id.*

Indeed, courts routinely find that the use by a former employee of his previous employer's confidential, proprietary or trade secret information is, in and of itself, sufficient to show irreparable harm and entitle the previous employer to injunctive relief. *See, e.g., Merrill Lynch v. Salvano,* 999 F.2d 211, 215 (7th Cir. 1993) (noting that a plaintiff "suffers irreparable harm from the solicitation and loss of its clients, and that this is a harm for which there is no adequate legal remedy"); *Union Carbide Corp. v. UGI Corp.,* 731 F.2d 1186, 1191-92 (5th Cir. 1984) ("Disclosure of strategic information [to a competitor] would cause irreparable harm in the absence of injunctive relief prior to the completion of litigation on the merits"); *Ecolaire Inc. v. Crissman,* 542 F. Supp. 196, 205 (E.D. Pa. 1982); *Mixing Equip. Co. v. Phila. Gear, Inc.,* 436 F.2d 1308 (3d Cir. 1971) (holding that injunction necessary because once trade secret information is revealed, company loses its competitive edge). Moreover, an inadequate remedy at law does not mean wholly ineffectual; rather, the remedy must be seriously deficient as

compared to the harm suffered. *See Foodcomm Int'l v. Barry,* 328 F.3d 300, 304 (7th Cir. 2003) (injunction properly issued if movant has no other adequate remedy at law).

Group One risks immediate and irreparable injury, loss and damage if Defendants are not enjoined from possessing and using the property stolen from Group One. If a competitor had access to Group One's copyrighted works, trade secrets, and confidential and proprietary information, the competitor could learn all of Group One's trading strategies and compete unfairly with Group One. While it is impossible to determine the amount of Group One's injury from Defendants' theft and use of its copyrighted works, trade secrets and other confidential and proprietary information, it is likely that Group One's damages could be substantial, and it is doubtful that Defendants have the financial wherewithal to make Group One whole.

Group One also risks immediate and irreparable injury if Defendants are not enjoined from deleting, destroying or otherwise tampering with evidence. Defendants already admit to deleting important evidence. Group One requires an immediate injunction to prevent Defendants from continuing to destroy evidence.

### C. The Balance of Equities Favors Group One.

The equities also weigh in favor of granting a temporary restraining order, as such relief is essential to prevent the use and disclosure of Group One's copyrighted works, trade secrets, and other confidential and proprietary information, and to prevent a final judgment in this action from being rendered ineffectual. In balancing the harms, the Court must weigh the error of denying a preliminary injunction to the party who would win the case on the merits against the error of granting an injunction to the party who would lose. *Foodcomm Int'l*, 328 F.3d at 305. Given the circumstances surrounding Defendants' departure from Group One and Defendants' own admissions, there can be no doubt that Defendants took Group One's copyrighted works,

trade secrets, and confidential and proprietary information for improper purposes. (Ex. B ¶¶3, 12-27.) Group One seeks to restrict Defendants from possessing or using such information to compete with Group One unfairly – there is no other way to protect Group One from injury. Defendants have no right to benefit from information they wrongfully obtained.

## CONCLUSION

For the foregoing reasons, Group One respectfully requests that the Court grant its Motion for Temporary Restraining Order and Injunctive Relief.

Dated this 6th day of December, 2007.

                                                Respectfully submitted,

                                                Group One Trading LP, Plaintiff


                                                By:  /s/Daniel A. Kaufman
                                                      One Of Its Attorneys


MICHAEL BEST & FRIEDRICH LLP
Daniel A. Kaufman
Laura Shroyer Liss
180 North Stetson Avenue
Chicago, Illinois 60601
Phone: 312-222-0800
Fax: 312-222-0818