**EXHIBIT A**

## DECLARATION OF JOHN H. EVANS

I, JOHN H. EVANS, declare:

1. I make this declaration of my own personal knowledge and would be competent to testify to these facts if called as a witness.

2. I am a Senior Computer Forensic Consultant employed by Project Leadership Associates, Inc. in Chicago, Illinois.

3. I have been employed in Information Technology for more than 14 years. I have been employed as a computer forensic examiner since 2004.

4. With respect to <u>Group One v. De Luca et al.</u>, I created forensic images of the defendants' home computers and external storage devices. There were a total of nine devices for which I created forensic images. In total, these images consist of 2.484 terabytes of data.

5. Given the amount of data to be searched, utilizing hundreds of keywords is likely to generate millions of "hits" over hundreds of thousands of unique files. Each "hit" represents an instance where a search term has been found one or more times in a file.

6. In any forensic search of computer files, many "hits" represent false positives. Such false positives are generated by files that include the applicable search term, but which are determined upon review to not be relevant.

7. Review of the large number of files which would likely trigger "hits" would represent a substantial undertaking. It would likely take weeks to perform a through review to exclude privileged and non-responsive documents.

8. A limited number of carefully constructed keywords would limit false-positives and allow for a more limited number of documents to be reviewed while still producing relevant data.

9. Utilizing a date range is also an effective and common means of limiting the number of non-responsive documents uncovered in a keyword search.

10. Unlimited access to the defendants' computers as requested by the plaintiff for forensic analysis would expose privileged and non-responsive personal information to the plaintiff.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

1/9/08
Date of Execution

_[signature: John H. Evans]_
Signature

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Group One Trading LP, | |
| Plaintiff, | No. 07 CV 6881 |
| v. | Honorable Virginia M. Kendall |
| Lauren DeLuca, Lawrence Spieldenner, John Superson and Stanton Todd, | Magistrate Judge Susan E. Cox |
| Defendants. | |

## PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS

Plaintiff, Group One Trading LP, ("Group One"), hereby requests, pursuant to Fed. R. Civ. P. 34 and the parties' Stipulation, that Defendants, Lauren DeLuca, Lawrence Spieldenner, John Superson and Stanton Todd, respond to the following document requests in writing and within twenty-one (21) days. Documents should be copied and sent to the undersigned counsel's attention on or before the date your response is due.

## DEFINITIONS AND INSTRUCTIONS

1. "Document" shall have the meaning assigned in Fed. R. Civ. P. 34 and shall include electronically stored information as that term is defined in Fed. R. Civ. P. 34.

2. "Identify" shall mean:

   a. with respect to a person, identify means to give, to the extent known the person's full name, present or last known address, and when referring to a natural person the present or last known place of employment.

   b. with respect to a document, identify means to give the (i) type of document; (ii) general subject matter; (iii) the date of the document; and (iv) author(s), addressee(s), and recipient(s).

3. "Communication" means the transmittal of information.

4. The terms "you", "your" or "Defendants" refer to Lauren DeLuca, Lawrence Spieldenner, John Superson and Stanton Todd, as well as their attorneys, agents, employees,

representatives, partners, experts, servants and all others acting on their behalf or in concert with them.

5. If you object to any discovery request as being vague or ambiguous, identify each word or phrase you consider to be vague, define the term as you understand it, and answer the discovery request according to your understanding.

6. If the discovery request cannot be answered in full, answer to the extent possible, specify the reason for the inability to answer the remainder, and state whatever information and knowledge you have regarding the remainder of the request.

7. The terms "relating to" or "related to" mean without limitation, concerning, referring to, pertaining to, responding to, alluding to, commenting on, connected with, about, evidencing, reflecting, discussing, describing, supporting, contracting, mentioning, analyzing, regarding, showing or referencing in any way, directly or indirectly, or being logically, legally or factually related.

8. The term "New Venture" means Defendant's new company or planned or proposed new company, including, but not limited, to the so-called "Group Two and a Half" entity, LLC entity or any other planned or proposed entity.

9. If you assert a claim of privilege to any request, please state the following for the material you claim is privileged:

    a. The type of information (e.g. letter, notebook, memorandum, recording, oral, e-mail, etc.);

    b. A general description of the subject information;

    c. The date of the information;

    d. The name, business address and current title of the source of the information;

    e.    The name, business address and current title of the recipient of the information;

    f.    A description of the location and manner in which the information has been maintained;

    g.    Identify all persons who have or had access to the information;

    h.    The basis for the claim of privilege, which provides sufficient detail to permit a judgment of whether the document is subject to an alleged privilege;

    i.    The statute, rule, or decision that is claimed to give rise to the privilege; and

    j.    If the basis of the claim of privilege is the work product doctrine, identify the proceeding for which the document or information was prepared.

## DOCUMENT REQUESTS

1.    All Documents pertaining to any Defendant's employment at Group One, including compensation each Defendant received while at Group One.

2.    All Documents pertaining to any Defendant's execution of an Employment Agreement with Group One, including all versions of any such Agreement.

3.    All Documents pertaining to any Defendant's execution of an Operating Agreement with Group One, including all versions, amendments and restatements of the Agreement.

4.    All diaries, journals, calendars, appointment books, schedules, logs, agendas, itineraries or other Documents reflecting any Defendant's day-to-day activities maintained by any Defendant from January 1, 2006 to the present.

5.    All Documents pertaining to any prospect lists, customer lists, or any other client contact information that any Defendant had access to while an employee at Group One.

6.    All Documents that pertain to Group One's business, including without limitation trading scripts, trading tools and formulas, best practices information, operations documents,

3

industry and regulatory research, vendor and customer lists, vendor and customer contact information, customer sales histories, habits and preferences, terms and conditions of transactions with customers, profit or pricing information, lease terms, and sales methods.

7.  All Documents that any Defendant prepared, received, utilized, had access to, compiled, copied, or stored in performance of his job functions while employed by Group One.

8.  All Documents in any Defendant's possession, custody or control that were owned, prepared, received by and/or utilized by Group One and Group One's current or former employees, including, but not limited to, all documents any Defendant created or had access to relating to investing or investing tools while working for Group One.

9.  All other Documents pertaining to any Defendant's retention, use or disclosure of any information acquired by any Defendant in the course of his employment with Group One.

10. All Documents pertaining to any Defendant creating or planning to create a new business, including, but not limited to, communications relating to a new business or the development of components of a new business, all scripts or programs developed for or by Defendants for use in work after leaving Group One, and any plans, agreements or contracts relating to Defendant's plans for work after leaving Group One.

11. All Documents pertaining to any Defendant leaving the employ of Group One.

12. All Documents that pertain to any Defendant's discussions with, or solicitation of, directly or indirectly, any Group One customer with respect to the potential or actual purchase or sale of any product or service on behalf of a real or potential business other than Group One, from February 1, 2006 to the present.

13. All Documents pertaining to any Defendant's communications, whether in person, by telephone, by email, fax or other means, with any employee of Group One (including

each co-Defendant), including, but not limited to, communications in which he discussed with the other employee leaving Group One's employ or joining any Defendant in a New Venture.

14. All Documents, written statements or correspondence of any kind that any Defendant received from or sent to any non-parties to this suit that support, refute, or relate to any of the allegations in the Complaint.

15. All Documents, other than personal, non-relevant Documents, contained on or by any device, media or service in any Defendant's possession, custody or control that provide or contain electronic data storage capacity and have been used by any Defendant since January 1, 2006, including, but not limited to, Blackberries, computers, flash drives, CDs, DVDs external hard drives and online or internet storage locations (e.g., webmail storage space, remotely hosted network space, or online storage and file sharing service) and list all such devices, media or services.

16. All Documents pertaining to Defendant's plans for work after leaving Group One.

17. All Documents pertaining to business plans or financing for any New Venture any Defendant considered involvement with after leaving Group One.

18. All confidentiality or non-disclosure agreements that any Defendant has entered into with any present or former Group One employee.

19. All Documents pertaining to any models, software or other developments relating to any Defendant's work plans after leaving Group One.

20. All documents relating to expenses incurred for any New Venture any Defendant considered involvement with after leaving Group One, including, but not limited to, receipts, invoices and travel records.

21. All documents relating to plans, developments or work done at any time by Tamir Hashem or Alex Pustilnik for any New Venture any Defendant considered involvement with after leaving Group One, including, but not limited to, plans, developments or work relating to hardware or software, programming, hardware or software evaluation and hardware or software thoughts and suggestions.

22. All documents relating to efforts or plans to hide or conceal any Defendant's plans or communications regarding a New Venture any Defendant considered involvement with after leaving Group One, including, but not limited to, communications relating to those efforts or plans and copies of software and software documentation.

23. All Documents pertaining to any personnel or employees whom Defendants considered involving in any New Venture any Defendant considered involvement with after leaving Group One.

24. All Documents pertaining to any shell or other companies or entities formed or discussed by any Defendant relating to any New Venture any Defendant considered involvement with after leaving Group One.

25. All Documents pertaining to Defendants' unemployment compensation, compensation or other sources of income since leaving Group One.

26. All Documents pertaining to any work done at any time on trading tools and development, Aqtor, Quoting Scripts, Volatility Surface Management, Trade Hedgers, Portfolio Servers, or collection of market data relating to any New Venture any Defendant considered involvement with after leaving Group One.

27. Forensic copies of all documents requested above in original electronic format with original metadata.

28. All Documents that support, refute, or relate to any of the allegations in the Complaint or Defendants' defenses thereto.

29. All Documents supporting or refuting the statements made in John Gilmartin's December 5, 2007 Declaration filed in support of Group One's Emergency Motion for a Temporary Restraining Order and Preliminary and Permanent Injunction.

30. All Documents supporting or refuting the statements made in Andrew Crain's December 5, 2007 Declaration filed in support of Group One's Emergency Motion for a Temporary Restraining Order and Preliminary and Permanent Injunction.

Dated: December 14, 2007

Respectfully submitted,

Group One Trading LP, Plaintiff

By: _____
One Of Its Attorneys

Daniel A. Kaufman
Laura Shroyer Liss
Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Ave., Suite 2000
Chicago, Illinois 60601
Telephone: (312) 222-0800
Facsimile: (312) 222-0818
Firm No.: 16519

7

## CERTIFICATE OF SERVICE

I, the undersigned, a non-attorney, certify that I caused the forgoing *Plaintiff's First Set of Document Requests* to be served by messenger upon:

><br>John D. Ruark
>Charles Risch
>John Monical
>Lawrence, Kamin, Saunders & Uhlenhop LLC
>300 South Wacker Drive, Suite 500
>Chicago, IL  60606

Dated: December 14, 2007

Adorn McGavock-West

**EXHIBIT C**

# Charles Risch

| | |
|---|---|
| **From:** | Charlie J. Risch [crisch@lksu.com] |
| **Sent:** | Tuesday, January 08, 2008 1:43 PM |
| **To:** | 'Weil, Michael'; 'Kaufman, Daniel A (35077)' |
| **Cc:** | 'Rosenstein, Ira G.'; John Ruark |
| **Subject:** | RE: Computer and e-storage review procedure.DOC |
| **Attachments:** | Charles Risch.vcf; Weil 1_8_08 letter.pdf |

Attached is a response to your January 7, 2007 correspondence. A hard copy will follow via U.S. Mail.

*Charlie*

**LAWRENCE, KAMIN, SAUNDERS & UHLENHOP LLC**

*Charles J. Risch*
Lawrence, Kamin Saunders & Uhlenhop
300 South Wacker Drive, Suite 500     312-372-1947 phone     www.LKSU.com
Chicago, Illinois 60606     312-372-2389 fax
Direct Phone  (312) 924-4260
email:  crisch@LKSU.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message

Rules governing our practice before the Internal Revenue Service require that we advise you that any tax advice in this communication (and any attachments) (i) is intended only for the addressee and (ii) is not written with the intent that it be used, and in fact it cannot be used, to avoid penalties under the Internal Revenue Code or to promote, market or recommend to any other person any tax-related idea.

**From:** Weil, Michael [mailto:mweil@orrick.com]
**Sent:** Friday, January 04, 2008 7:54 PM
**To:** crisch@lksu.com; jruark@lksu.com
**Cc:** Rosenstein, Ira G.; Kaufman, Daniel A (35077)
**Subject:** RE: Computer and e-storage review procedure.DOC

Charlie and John,

I may be mistaken, but I thought you said yesterday that you would send revisions to the protocol to me today. Please let me know when I can expect it.

Have a good weekend.

Michael

**From:** Weil, Michael
**Sent:** Thursday, January 03, 2008 11:41 AM
**To:** 'crisch@lksu.com'; 'jruark@lksu.com'
**Cc:** Rosenstein, Ira G.; 'Kaufman, Daniel A (35077)'
**Subject:** FW: Computer and e-storage review procedure.DOC

Charlie and John,

I believe that the attached is the latest version of the protocol. Please let us know if it is acceptable.

Michael

---

**From:** Weil, Michael
**Sent:** Wednesday, December 26, 2007 7:13 PM
**To:** 'crisch@lksu.com'; 'jruark@lksu.com'
**Cc:** Rosenstein, Ira G.; 'Kaufman, Daniel A (35077)'
**Subject:** Computer and e-storage review procedure.DOC

Charlie and John,

I have included a protocol at the end of the attached for reviewing the defendants' email accounts. Please let us know if it is acceptable.

Thank you,

Michael

============================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

============================================================

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com

# LAWRENCE, KAMIN, SAUNDERS & UHLENHOP LLC

300 South Wacker Drive, Suite 500　　312-372-1947 phone　　www.LKSU.com
Chicago Illinois 60606　　312-372-2389 fax　　crisch@LKSU.com   Direct Dial: 312-924-4260

January 8, 2008

**VIA EMAIL - mweil@orrick.com**
**AND US MAIL**
Michael D. Weil
Orrick, Herrington & Stucliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

　　Re: Group One v. DeLuca, *et al.*

Dear Michael:

Your January 7, 2007 letter confirms that John and I (and our clients) were operating under incorrect assumptions in our earlier discussions concerning an exchange of information. Perhaps, you will excuse our earlier misunderstanding in light of Judge Kendall's December 17, 2007 order, which stated: "Discovery is ordered stayed until 1/10/2008 at 09:00 AM, at which time the parties will report on the progress of any settlement." As this order was issued based on one or more conversations between personnel from Dan's office and Judge Kendall's office, it buttressed our understanding that the information exchange that we were discussing was to be in furtherance of settlement discussions and not just an exercise through which you could gain unfettered access to search through all of my clients' electronic data, the vast majority of which is personal or otherwise irrelevant to this dispute, in a quest to uncover "evidence". For the reasons mentioned in my January 7 email and based on the statement in your January 7 letter that "we cannot formulate a specific settlement demand **or even the parameters of such a settlement** without first conducting some discovery and investigation" (emphasis added), we now appreciate that our understanding that we were engaged in a cooperative effort calculated to reach a speedy resolution of this case was incorrect. This last statement also contradicts your statement in our phone conversation last Thursday that you would put some sort of settlement proposal in a letter to us.

Before addressing your objections to the protocol for producing relevant information contained in the "mirrors" that we have suggested, I believe that I need to address some of the other statements made in your letter. You state that: "At the TRO hearing, the Court expressed her concern about your clients' conduct and ordered your clients to make mirror images of their computers and other electronic information storage devices, which would be turned over for us." This statement is largely inaccurate. I was at the hearing and do not recall the Court expressing concerns about my clients' conduct (other than their not standing still and failing to control their facial expressions during the hearing). I do recall her cautioning my clients that the denial of the

Page 2
January 8, 2008
Michael D. Weil

TRO did not mean that the dispute was at an end and making some comment about possible problems if my clients solicited Group One customers in violation of an agreement. As we discussed in the context of the document requests that you served on us, Group One does not have any "customers" for my clients to solicit. Also, although the Court did order that "Defendants ... preserve information contained on personal computers, and ... create mirror images of the contents within 21 days", it never suggested that the mirrors were to be turned over to you. As we have advised you, such mirrors have been made, including, at your request, of a mirror of a computer used by John Pettrizzo although he is not a party to the federal law suit.

Your letter also mischaracterizes the status of our discussions concerning your suggested protocol for searching the mirrors. You quoted parts of my December 26 email but left out the parts where I said that John and I had not had an opportunity to review your proposal in detail or discuss it with our clients and where I stated: "When drafting the email proposal, please take into account that we will want to have a provision that precludes anyone from opening emails from or to John or me where the other recipients/authors are limited to our clients (including John Petrizzo). Also, we would like to have an express provision requiring the return of any mirrors/copies of mirrors upon the completion of all authorized searches." These express concerns were never addressed by you, nor were the additional concerns that I expressed orally such as limiting searches to documents/files created during a specific, relevant time-frame and protecting the integrity of other attorney-client communications between my clients and attorneys other than John or me.

In addition, you completely fail to acknowledge that, in our conversation last Thursday, John and I explicitly raised our concerns that our discussions were getting off track as methods for settling the dispute were not being addressed. We also expressly stated that we were contemplating providing access to the mirrors to an extent that we believed would never be ordered by a judge or arbitration panel because we were trying to promote trust but that your failure to offer anything in return, such as a settlement proposal or possible structure, was causing us to rethink our position. As detailed in my December 7 email, the comments that you made in response, which we believed basically "brushed off" our clients' concerns and focused on an aggressive pursuit of only your goals, increased our misgivings. A detailed review of your suggested protocol after this conversation, particularly the language: "[a]ttorneys for the Plaintiff and their forensics expert(s) shall analyze Defendants' Data using general forensics techniques and by searching Defendants' Data for relevant business-related terms", gave us additional concerns. Although we stated at the very outset of our conversations on this issue, that we wanted everything that was to be done to be spelled out in advance, this language appeared to allow for some unspecified analysis in addition to the searches that we had discussed to be undertaken. As a result, we decided that we were no longer comfortable with a protocol that turned possession of the mirrors over to you, although we would still consider such a step as part of a settlement to allow your expert to verify our expert's analysis.

You have raised certain objections to the protocol that we have suggested. First you complain that ten search terms are not enough. While we are willing to negotiate the number of search terms to be used initially, you will have to persuade us why ten terms is not enough. In addition, we are not willing to have such a discussion in a vacuum but only after receipt of a list of the

Page 3
January 8, 2008
Michael D. Weil

search terms that you propose be used. As we advised you last week, our expert has informed us that there is a huge amount of data on the mirrors. Use of too many search terms or terms that are too general is calculated to generate an unreasonable number of false positives requiring an unreasonably burdensome review process. Your second complaint -- that we do not provide for additional searches that might have to be run in light of the initial search results -- is unwarranted. Please review my January 7 email again, as it expressly allows for such a possibility. Finally, you complain that you need analyses performed on the mirrors in addition to word searches, including analyses to determine what, if any, information may have been transferred from one device to another. Presumably, this is part of what you were attempting to allow for, without specifying, in the language from your proposed protocol quoted in the immediately preceding paragraph. Again, my January 7 email intended to allow for the possibility of some additional analysis by our expert by indicating that we would agree to allow your expert to consult with ours concerning the methods for conducting searches. We are amenable to discuss such issues, but only as the issues are specifically and concretely identified.

Our clients are still interested in discussing settlement if your client is. If we are not going to discuss settlement, then we insist that discovery proceed in an orderly and appropriate way. We believe that what we propose above is a reasonable and appropriate procedure. We do not believe that the procedure that you propose. i.e., turning over all data, including irrelevant, personal and privileged data, to you to search as you see fit is a reasonable or appropriate procedure. We are, of course, quite comfortable defending our position in Court if that should become necessary. We suggest, however, that a better course would be to get our discussions back on course by agreeing to a protocol for searching the mirrors that will be conducted by our expert and beginning to engage in concrete settlement discussions.

Yours truly,

Charles J. Risch

CJR/dm

cc:   Daniel A. Kaufman